contract. This — although there is no dispute that the buyer had always assured the seller that it would participate as a supplier if the buyer received the government contract. The seller, of course, argues that the buyer was anxious to be able to perform on the government contract if it received it and, therefore, was anxious to keep its supplier in line. Evidently the buyer had no similar problem with regard to the processor. Except on an experimental basis, the processor was never told to go ahead and coat the fabrics before the buyer received its government contract. The motivation and its resolution is the subject of speculation and it is unsatisfactory, as it always is, to try to read the interior of men's minds. The documentation, however, and the fact of deliveries made and received without objection are unalterable objective facts.

It is for these reasons that I dissent and vote to reverse the order, as a matter of law. Even if on July 8th there was no contract, what the parties did thereafter resulted, either as a matter of manifested intent or estoppel, in a sale under a written contract to arbitrate. Needless to repeat, it was not necessary that the buyer sign the contract forms. Nor is the view of Special Term acceptable that though there might have been a purchase, there was never an adoption of the written contract forms. On the undisputed objective facts, the conclusion is unavoidable that, as a matter of law, there was a sale and that the sale was made under the written agreement. And the buyer is estopped to contend otherwise — not only as a matter of "morals" as the buyer's officer believed, but also as a matter of law.

To whatever extent it is necessary, if it were necessary, to decide the issues of fact I would also reverse the order on the facts. There is nothing but vague and inconclusive description of the conversations among the persons involved subsequent to the telephone conversation of July 8. Even if the purchasing agent's alleged telephone conversations during August are considered, they provide but a scintilla of fact to create an issue and a palpably false one to boot. This is never sufficient (*Matter of Case,* 214 N. Y. 199, 203).

Accordingly, the order of Special Term should be reversed, the motion to stay arbitration denied, and the cross motion to compel arbitration granted, with costs to respondent-appellant.

M. M. Frank, Valente and Stevens, JJ., concur in decision; Breitel, J. P., dissents and votes to reverse in opinion, in which McNally, J., concurs.

Order unanimously affirmed, with $20 costs and disbursements to the petitioner-respondent. [16 Misc 2d 152.]

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HERBERT WHITE, Appellant.— Judgment unanimously affirmed. No opinion. Concur — Botein, P. J., Rabin, M. M. Frank, Valente and McNally, JJ.

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CLIFFORD BRANTLEY, Appellant.— Judgment unanimously affirmed. No opinion.— Concur — Botein, P. J., Rabin, M. M. Frank, Valente and McNally, JJ.

■ In the Matter of the Arbitration between M. W. KELLOGG COMPANY, Respondent, and MONSANTO CHEMICAL COMPANY, Appellant.— Order unanimously affirmed on the law and on the facts, with $20 costs and disbursements to the respondent (*Matter of Amerotron Corp.* [*Shapiro Woolen Co.*], 3 A D 2d 899, affd. 4 N Y 2d 722). *Matter of Wrap-Vertiser Corp.* [*Plotnick*] (3 N Y 2d 17, 18, 20) does not direct or impel a different conclusion. In that case the court held a demand for damages "arising from fraud and misrepresentation inducing claimant to enter into the contract" raised no question "concerning its interpretation or nonperformance" within the scope and meaning of the arbitration clause. The clause in that case was a restrictive clause and, as